MUTEK CHU GEWECKE, ADMINISTRATRIX AD PROSEQUEN-DUM AND GENERAL ADMINISTRATRIX OF THE ESTATE OF MARTIN GEWECKE, DEC'D, PLAINTIFF, v. EVAN WOLAR-SKY; C.N. STOVER; PATRICIA WOOD, M.D.; STEVEN M. SCHWARTZ AND JOSEPH SPALTRO, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.

Superior Court of New Jersey
Law Division Burlington County

Decided August 20, 1982.

*Joseph H. Kenney* for plaintiff (*Archer, Greiner & Read,* attorneys).

*Robert J. Brookes* for defendant Wood (*Martin, Crawshaw & Mayfield,* attorneys).

*Donald J. Grasso* for defendants Wolarsky and Stover (*Orlovsky, Grasso & Orlovsky,* attorneys).

*Thomas B. Leyhane* for defendant Schwartz (*Shanley & Fisher,* attorneys).

HAINES, A. S. J. C.

This is a medical malpractice action. Martin Gewecke, a physician, was seriously injured in the crash of a glider which he was piloting. He died after certain medical procedures had been undertaken. Dr. August Ciell, one of plaintiff's experts, provided an opinion that defendant Dr. Steven M. Schwartz had been negligent in failing to obtain necessary information from another doctor prior to surgery and, for that reason and others, failing to make a proper assessment of decedent's condition. Dr. Ciell's deposition was taken by defense counsel. He was asked the following hypothetical question:

> Now, I am asking you in this case to assume that Dr. Schwartz was aware of the status of this man's cardio-pulmonary and abdominal injuries, if any, from Dr. Wolarsky in the emergency room. Wouldn't it be appropriate, and given that information, for him to concentrate on the man's ENT complaints?

Plaintiff's counsel objected to the question on the ground that there was no support for the assumption in the record. He requested defense counsel to "make a representation that it is either in the record or that that is a fact. . . . " Defense counsel, considering the request to be improper, refused to make the representation, resulting in a direction to the witness not to answer the question. All defendants now move for an order requiring Dr. Ciell to answer the hypothetical question. They argue that they are not, and should not be, restricted by any requirement that facts contained in a hypothetical question, asked in the course of a deposition, be in the record or otherwise available.

The problem is one of general concern, not previously addressed in any considered way by New Jersey courts and only to a limited extent by the federal courts. Our inquiry starts with the following rules:

*R.* 4:10 -2(a):

. . . . . . . .

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ... It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence ....

*Evid.R.* 56: (effective July 1, 1982)

. . . . . . . .

A witness qualified pursuant to Rule 19 as an expert by knowledge, skill, experience, training or education may testify in the form of opinion or otherwise as to matters requiring scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or determine a fact in issue. The facts or date in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Thus, we find a distinction between expert information sought in discovery and that presented at trial. At trial, opinion testimony must be based on "facts or data ... perceived by or made known to him at or before the hearing," while it is sufficient for discovery purposes, if the information sought, though inadmissible at trial, "appears reasonably calculated to lead to the discovery of admissible evidence." Query: Is an opinion, responding to a hypothetical question, which contains factual information not in the record and not known to counsel, "reasonably calculated to lead to the discovery of admissible evidence?"

In *Rogotzki v. Schept,* 91 *N.J.Super.* 135, 152 (App.Div.1966), the court, referring to doctors who were parties, said: "It is clear that defendants may be deposed as to the facts of the treatment they gave—what they did, what they saw, and the diagnoses rendered. It is also clear that they may not be asked

to respond to purely hypothetical questions." Reasons supporting the latter statement were not given. *Rogotzki* dealt with a defendant doctor as opposed to an expert witness, the situation here. The court did not define the words "purely hypothetical"; presumably, they refer to questions containing facts not known to the deponent. The case is not helpful. An *expert* witness *can* be asked "purely hypothetical" questions, the problem being the one presented here: may such questions contain factual information not known to anyone?

The federal courts, proceeding under a rule identical to our *R.* 4:10–2, support plaintiff's position. In *Williams v. Thomas Jefferson University,* 54 *F.R.D.* 615 (E.D.Pa.1972), the District Court said (at 617): "Hypothetical questions must be based upon facts of record, for example, the testimony of a witness who has been subjected to cross-examination."

In *Coxe v. Putney,* 26 *F.R.D.* 562 (E.D.Pa.1961), plaintiff, during a deposition, was permitted to ask a defendant doctor whether he would have acted differently had he been aware of certain facts, only because the assumed facts were in the record. The court held:

> In the case before us, the "state of facts" assumed by plaintiff's counsel, *i.e.,* that the defendant had been warned of plaintiff's sensitivity, is one as to which there is proof (Dr. Charamello's testimony) and as to which defendant has had an opportunity to cross-examine. Defendant's counsel's contentions that the defendant's denial of the assumed state of facts makes that state of facts purely hypothetical and ignores the sworn testimony of the plaintiff's witness. At present, the assumed state of facts is a factual issue for the jury's determination. Since a jury might find that the defendant did have notice of the plaintiff's sensitivity, the plaintiff is entitled to ask the defendant what effect that notice would have had, if any, on the defendant's course of treatment of plaintiff. [at 563–564]

In *Beirne v. Fitch Sanitarium,* 20 *F.R.D.* 93 (S.D.N.Y.1957) the court held that a hypothetical question asked of a deponent must contain facts developed in the record:

> While questions which to a degree call for an expression of opinion may, where they are relevant to the issues, be permitted [citation omitted] the rules were not intended to permit a party to question his adversary as an expert witness by putting a series of hypothetical questions based upon an assumed state of facts as to which there is no proof and as to which the adverse party's counsel has had no opportunity to cross-examine.

. . . .

This type of inquiry does not lead to the discovery of evidence relevant to the issues and would serve no substantial purpose.  [at 94]

The federal cases also restrict hypothetical questions to those facts which are in the record, a limitation with which I do not agree.  Many depositions are taken at a time when facts are known but not reflected in the record.  A more liberal rule is a necessity.  All of these cases deal with defendant doctors, who apparently were also expert witnesses.  *Williams* also considered hypothetical questions addressed to expert witnesses who were not parties.  No case makes any distinction between a party and a witness.  There is no need to do so;  a party who gives an expert opinion should be treated no differently than a witness who gives an expert opinion.

*R.* 4:10–2 prohibits any objection based upon the fact "the information sought will be inadmissible at trial";  it simply requires that it be "reasonably calculated to lead to the discovery of admissible evidence."  The rule places no limitation upon the kind of facts which are presented in a hypothetical question for the purpose of producing "the information sought." It may be argued, therefore, that our Rules are concerned only with information to be elicited, not with the means employed. On its face, this analysis is wrong.  Means must be considered. Oppressive discovery, for example, is not permitted.  *R.* 4:10–3. Further, *R.* 4:10–2 merely states that the inadmissibility of information sought "is not ground for objection."  It does not preclude other objections.

It is entirely clear that some hypothetical questions are beyond the pale.  For example, suppose the question here had been: "Doctor, if your patient had been a horse and not a man, would your opinion be different?"  No one would contend that this question was permissible.  The information sought would not be "reasonably calculated to lead to the discovery of admissible evidence."  Or take the question posed to Dr. Ciell, paraphrased for convenience: "Doctor, if Dr. Schwartz had known facts which he did not know, namely, the status of the dece-

dent's cardio-pulmonary and abdominal injuries, would your opinion be different?" Can it be said that the answer ("the information sought") is "reasonably calculated to lead to the discovery of admissible evidence?" I conclude that it is not, that an expert's opinion based upon unknown facts is not likely, except in an unacceptably tenuous way, to lead to the discovery of any admissible evidence. Furthermore, it offers the opportunity for endless hypothetical questions: it would permit exploration of a witness's opinion without limitation and without profit. This would constitute oppression.

■ The basic rule adopted here, therefore, is that facts contained in a hypothetical question put to an expert witness must be in the record or known by counsel to be available. On request, counsel conducting the examination must represent that the facts do exist and must identify their source. A representation which states that the facts are in the record need not specify their location. Any rule requiring the pinpointing of such information could unduly prolong discovery proceedings. This rule, though basic, does not resolve all problems.

■ Difficulty arises when the deposition takes place before counsel knows within any reasonable degree of certainty whether the fact in question is available. This may occur without any lack of diligence on the part of counsel, e.g., when an expert witness has not been found, or has not completed a report, when a witness is temporarily unavailable, and when there has not been time within which to complete an investigation. Counsel, therefore, cannot then represent that a particular fact is available. In such cases, it is unfair to apply the basic rule and limit discovery, thereby excluding access to information or duplicating and extending discovery procedures. It is enough, in these situations, to represent that in counsel's presently held, honest belief, the fact is likely to be available, that due diligence will be exercised to make it available, and, if it is discovered, that opposing counsel will be so advised and will be supplied with an identification of source. In making this representation, counsel

must state the reason that the limited representation is required to be made, *e.g.,* that an absent witness, familiar with the circumstances surrounding the fact in question, is yet to be interrogated, or that an expert witness has not completed her analysis and report.

In the present case, since the required representation has not been made, the motion to compel Dr. Ciell to answer the hypothetical question must be denied. The question may be repeated, however, and must be answered if the representation is then made.